IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | FILED UNDER SEAL |
| v. | NO. 3:19-CR-83-S |
| CAROLYN RENA DAVIS (2) | |

**INFORMATION**

The United States Attorney Charges:

**Count One**
Conspiracy to Commit Bribery Concerning Programs Receiving Federal Funds
[Violation of 18 U.S.C. § 371]

1. **Carolyn Rena Davis** was elected to the Dallas City Council District 7 in 2007, and re-elected to the same position in 2009, 2011, and 2013. During her tenure on the City Council, **Davis** also served as Chair of the Dallas Housing Committee. **Davis** was, as such, during all relevant times, an agent of the City of Dallas.

2. The City of Dallas was a local government that received benefits in excess of $10,000 in each of the consecutive fiscal one-year periods beginning October 1, 2013, and October 1, 2014, under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal assistance.

3. Person A was a developer of affordable housing who relied on and benefited from government programs including loans, tax-exempt bonds and housing credits to finance his projects.

Information - Page 1 of 8

4. From in or around November 2013 to in or around June 2015, in the Dallas Division of the Northern District of Texas, the defendant, **Carolyn Rena Davis**, Person A, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate and agree with each other for **Davis** to receive bribes from Person A, a real estate developer, intending to be influenced and rewarded in connection with a business, transaction, or series of transactions of the City of Dallas, involving anything of value of $5,000 or more, specifically, Person A's affordable housing projects, in violation of Title 18, United States Code, Section 666(a)(1)(B).

5. It was a part and object of the conspiracy that **Davis** corruptly solicited and demanded, and agreed to accept and did accept things of value with the intent to be influenced and rewarded in the performance of **Davis'** official acts as a Dallas City Council Member and as Chair of the Dallas City Housing Committee that would advance the business interests of Person A in acquiring and developing affordable housing projects in the City of Dallas.

6. It was further an object of the conspiracy for Person A to enrich himself by corruptly offering, giving, and agreeing to give things of value to **Davis** for her performance of official acts that would advance the business interests of Person A concerning his affordable housing projects in the City of Dallas.

<u>Manner and Means of the Conspiracy</u>

7. In return for benefits totaling approximately $40,000.00, and the promise

by Person A of future employment for **Davis** as a consultant, **Davis**, in her official capacity, lobbied and voted for Person A's project including the authorization of City of Dallas funds and obligations in excess of $2.5 million for said project, all of which Dallas concealed from the Dallas City Council, the Dallas Housing Committee, and the citizens of the City of Dallas.

8. As a member of the City Council and as Chair of the Housing Committee, **Davis** would and did use her official position to seek things of value for herself by providing official assistance to Person A, who sought Texas Department of Housing and Community Affairs (TDHCA) approval of Person A's tax credit applications located in the City of Dallas.

9. More specifically, in return for things of value, **Davis** would and did agree to perform and did perform a pattern of official acts to promote and advance Person A's business interests which included:

    a. supporting and voting for Person A's project as the Chair of the City of Dallas Housing Committee;

    b. moving the City Council to vote for, and voting for, Person A's project as a City Council Member, including authorizing the Dallas Housing Finance Corporation (DHFC) to provide a $2,520,000 development loan to Person A's project;

    c. seeking the support of other elected officials for Person A's project; and

d.     agreeing to lobby for Person A's project before the TDHCA.

10.    At the direction of **Davis**, and in order to disguise the bribe payments, Person A wrote checks payable to a not-for-profit company owned by Person B and to Person B individually.

11.    At **Davis'** direction, Person B deposited and or cashed the checks received from Person A and then gave some or all of the proceeds to **Davis** in cash.

12.    **Davis** would and did conceal her expected and actual receipt of things of value by not disclosing conflicts of interest, omitting sources of income on a City of Dallas Financial Disclosure Report, and failing to recuse herself from votes wherein she was conflicted.

Overt Acts

13.    In furtherance of the conspiracy and to effect the objects thereof, **Carolyn Rena Davis** and Person A, committed, and caused to be committed, the following overt acts, among others, in the Dallas Division of the Northern District of Texas:

14.    Sometime on or before November 18, 2013, the exact date being unknown to the United States Attorney, **Davis** and Person A agreed that **Davis** would promote Person A's affordable housing projects before the City Housing Committee and the City Council in exchange for things of value.

15.    On or about November 18, 2013, Person A gave **Davis** a check in the amount of $2,500.00, payable to Person B, written on Person A's Amegy Bank account

xxxxxx8967.

16.     On or about September 10, 2014, Person A gave **Davis** a check in the amount of $2,500.00, payable to Person B's not-for-profit company, written on Person A's Independent Bank of Texas account xxxx1273.

17.     On or about October 20, 2014, Person A gave **Davis** a check in the amount of $2,500.00, payable to Person B's not-for-profit company, written on Person A's Amegy Bank account xxxxxx8967.

18.     On or about November 7, 2014, Person A gave **Davis** a check in the amount of $9,000.00, payable to Person B's not-for-profit company, written on Person A's Sovereign Bank account xxxx0497.

19.     On or about November 18, 2014, Person A gave **Davis** a check in the amount of $6,000.00, payable to Person B's not-for-profit company, written on Person A's Sovereign Bank account xxxx0497.

20.     On or about January 8, 2015, Person A gave **Davis** a check in the amount of $3,500.00, payable to Person B's not-for-profit company, written on Person A's Amegy Bank account xxxxxx8967.

21.     On or about January 22, 2015, Person A gave **Davis** a check in the amount of $1,500.00, payable to Person B's not-for-profit company, written on Person A's Amegy Bank account xxxxxx8967.

22.     On or about February 2, 2015, during a meeting of the Housing Committee,

**Davis**, as the Chair of the Housing Committee, voted to support moving Person A's project forward to the City Council, so that the Council could decide whether to provide government-backed funding and support tax-exempt bonds and tax credits to Person A's project. At that time, the tax credit application for Person A's project was in direct competition with that of a competing project. **Davis'** recommendation included support for City of Dallas funding of $168,000.00 and a DHFC development loan funding of $2,520,000.00 for Person A's project. Person A was present at the meeting.

23. On or about February 25, 2015, **Davis** moved the City Council to authorize the DHFC to make a development loan to Person A's company in an amount not to exceed $2,520,000.00 for Person A's project, as an integral part of Person A's TDHCA's 9% tax credit application. **Davis**, along with those City Council members present, voted to adopt the resolution.

24. On or about March 6, 2015, Person A gave **Davis** a check in the amount of $2,000.00, payable to Person B's not-for-profit company, written on Person A's Independent Bank of Texas account xxxx1273.

25. On each occasion wherein Person A gave **Davis** a check, **Davis** would give the check to Person B who would then either deposit it into an account held by Person B, or cash it. Generally, Person B would then give some or all of the proceeds to **Davis**.

26. On or about March 19, 2015, **Davis** filed her 2014 Annual Financial Disclosure Report with the City of Dallas and did not disclose the payments she received

from Person A in 2014.

27. On or about April 13, 2015, at approximately 4:16 p.m., Person A told **Davis**: "So, I know you wanted the rest of the cash. I have a – probably half of it. I know I have over another thousand bucks or we could do it tomorrow, so - ." **Davis** responded: "Well, it's up to you .... We can wait until tomorrow if you want to."

28. On or about April 23, 2015, at approximately 9:24 a.m., **Davis** told Person A that she questioned a City of Dallas housing official (Official X) about the status of Person A's project for 9% TDHCA funds which was tied in points with another competing project. **Davis** told Person A that she told Official X to connect Person A with a non-profit so that his project would get another point in the scoring system, thereby surpassing the score of the other competing project. Person A told **Davis** that he would be "disappointed" if his project did not get on TDHCA's list of projects "they are seriously considering." Person A told **Davis** that he wanted her, and possibly another City Council Member (Council Member Y), to lobby for his project before the TDHCA. **Davis** agreed to lobby the project, in her official capacity, before the TDCHA in Austin, Texas.

29. On or about May 18, 2015, Person A went to his bank, accompanied by **Davis**, withdrew $5,000.00 cash from his Independent Bank of Texas account xxxx1620, and gave it to **Davis.**

30. On or about June 5, 2015, at approximately 12:16 p.m., Person A withdrew

$4,000.00 cash from his Sovereign Bank account xxxx0497 and gave **Davis** approximately $3,000.00 cash.

31. On or about June 13, 2015, Person A met with **Davis** and gave her approximately $3,000.00 in cash.

All in violation of 18 U.S.C. § 371 (18 U.S.C. § 666(a)(1)(B)).

ERIN NEALY COX
UNITED STATES ATTORNEY

_/s/ Marcus Busch_
MARCUS BUSCH
Assistant United States Attorney
Texas Bar No. 03493300
ANDREW O. WIRMANI
Assistant United States Attorney
Texas Bar No. 24052287
1100 Commerce Street, Third Floor
Dallas, Texas  75242-1699
Tel: 214.659.8600
Fax: 214.659.8809